**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-01970-NYW

MICHELLE L. VASQUEZ,

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This civil action arises under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401–33 for review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Michelle L. Vasquez's ("Plaintiff" or "Ms. Vasquez") application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income Benefits ("SSI"). Pursuant to the Parties' consent [#13], this civil action was referred to this Magistrate Judge for a decision on the merits. *See* [#18]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. Upon review of the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court **REVERSES** the Commissioner's decision and **REMANDS** for further proceedings.

## BACKGROUND

      This is the second time Plaintiff Michelle Vasquez comes before the court seeking review of an ALJ's decision denying her benefits. Ms. Vasquez first filed for DIB and SSI benefits on

June 30, 2011, with an alleged disability onset date of April 30, 2011. [#11-12 at 583].[1] The ALJ denied her request and she appealed to this court which reversed and remanded for further proceedings. *Vasquez v. Colvin*, No. 14-CV-01198-MEH, 2015 WL 1186737 (D. Colo. Mar. 11, 2015). On remand, this matter then went before the present ALJ who held a hearing on November 3, 2016 (where Ms. Vasquez amended her alleged date of onset to May 31, 2011) and issued a denial on January 13, 2017. [#11-12 at 580, 607]. The Appeals Council then denied review on June 27, 2018. [*Id.* at 571]. On August 3, 2018, Plaintiff commenced the present matter, once again asking a court in this District to review the denial of benefits. [#1].

The record before the ALJ reflects information regarding Plaintiff's severe physical and mental limitations for diabetes, neuropathy, kidney dysfunction, degenerative joint disease, anxiety, and depression. [#11-12 at 586]. Specifically, as relevant for present purposes, the ALJ had before her evidence regarding: (1) Plaintiff's self-reported daily activities and limitations; (2) the opinion of treating physician Dr. David Neece; (3) the opinion of treating physician-podiatrist Dr. Gordon Rheume; (4) the opinion of the Commissioner's consultative examining physician, Dr. Adam Summerlin; (5) the State agency non-examining physician, Dr. Alan Ketelhohn, M.D.; (7) the state agency non-examining psychologist, MaryAnn Wharry. On appeal, Ms. Vasquez identifies the following flaws with the ALJ's analysis:

> (1) The ALJ gave weight to Dr. Neece's opinion of mental limitations but failed to account for them in the RFC finding.
>
> (2) The ALJ denied controlling weight to Dr. Neece's opinion of physical restrictions but failed to determine whether it was still entitled to some other quantum of weight.

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents the court cites to the document and page number generated by the CM/ECF system.

(3) The ALJ did not have valid reasons for rejecting Dr. Rheume's opinion of physical restrictions.

[#15 at 4]. As relief, Plaintiff requests an immediate award rather than a remand for another hearing. [*Id.*]. Because Ms. Vasquez's overall records give important context to the issues on appeal, this court discusses them briefly.

Dr. David Neece provided opinions as to Plaintiff's physical and mental disability. Dr. Neece filed two Med-9 Forms, finding that Plaintiff was disabled although the handwritten record is largely illegible. [#11-10 at 489–91]. Dr. Neece, in a letter to Plaintiff's counsel, stated that Plaintiff needed to elevate her feet above the heart 2-3 times a day for 15-30 minutes and needed to lie down for 15 minutes every two hours. [#11-11 at 539–40]. When asked if Plaintiff was capable of doing full-time work, Dr. Neece stated that it "depends on the type of work" but later on that same page states that Ms. Vasquez was "unable to work" in response to a query whether she was "prevented [from doing] full time work." [*Id.* at 540]. In a record dated March 11, 2013, Dr. Neece further opined that Ms. Vasquez was "completely disabled from being able to resume previous work requirements." [*Id.* at 569–70].

Dr. Neece also completed a Residual Functional Capacity ("RFC") evaluation. [*Id.* at 498]. In it, Dr. Neece found that Plaintiff had a "marked" inability to "complete a normal workday" due to her depression and anxiety and that she would be off-task for 30% of the workweek given the same. [*Id.* at 499, 500]. As to her physical limitations, Dr. Neece reported that she could sit for thirty minutes at a time and ten hours out of an eight-hour workday.[2] [*Id.* at 501]. Ms. Vasquez could be on her feet for an hour at a time for a total of eight hours in an eight-hour day. [*Id.*]. Despite this, Dr. Neece opined that Ms. Vasquez needed to elevate her feet for 15 minutes every

---

[2] Given that ten exceeds eight, this court interprets Dr. Neece's opinion to be that Ms. Vasquez could sit a full eight-hour work day.

2-3 hours—this time merely level as opposed to above her heart—and needed to lie down for fifteen minutes every two hours. [*Id.* at 502, 503].

Dr. Gordon Rheume, a podiatrist, provided a brief opinion on Plaintiff's physical disability. [*Id.* at 568]. Dr. Rheume stated that Ms. Vasquez could only stand for thirty minutes at a time and could only stand for one or two hours total a day in these thirty-minute intervals. [*Id.*]. Dr. Rheume based this opinion on Plaintiff's complaints; while he references her diagnosis of neuropathy, the opinion is otherwise only supported by Plaintiff's own recounting of her ailment. [*Id.*].

Drs. Summerlin and Ketelhohn also provided opinions. Dr. Summerlin provided a consultative examination in which he stated that Plaintiff could stand and sit for up to six hours, lift twenty-five pounds frequently and fifty pounds frequently, and should be limited to occasionally working around unprotected heights. [*Id.* at 527]. Dr. Ketelhohn, a non-examining physician, opined that Plaintiff was limited to light work. [#11-3 at 62].

For her own part, Plaintiff states that she takes part in a wide range of daily activity. She conducts self-care and basic hygiene, but requires a chair in the shower and wears a limited array of easy-to-put on clothes. [#11-6 at 201]. She cooks her own meals, but her impairments limit her to cooking in brief intervals, with help, and usually only frozen meals or soup which takes about ten minutes. [*Id.* at 202]. She cleans and does household work, but doing the dishes takes her an hour because she cannot stand for long enough to complete the task in one session. [*Id.*]. She goes out to shop at 7-11 once a month, but cannot drive herself and spends only thirty or so minutes shopping. [*Id.* at 203]. She reports that "all she do[es] is cry" which impedes her familial and social relations. [*Id.* at 205]. She has a son who was severely disabled in a car accident, and she has been helping him do paperwork for his divorce. [#11-11 at 541].

Faced with these often-conflicting opinions, the ALJ determined that Plaintiff was not disabled, rejecting Dr. Neece's opinion and assigning little weight to Dr. Rheume's. The Appeals Council denied review, and Plaintiff now seeks this court's review. [#11-12 at 571].

# APPLICABLE LAW

## I.     Standard Of Review

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *cf. Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)).  The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted).  But "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted).  The court may not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

## II.     Five-Step Analysis

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act.  42 U.S.C. § 423(a)(1).  An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). Additionally, the claimant must prove she was disabled prior to her date last insured. *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4)(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines the maximum amount of work the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751; *see also id.* at 751–52 (explaining the decisionmaker must consider both the claimant's exertional and nonexertional

limitations).  The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work.  *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted).  "The claimant bears the burden of proof through step four of the analysis."  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience.  *Neilson*, 992 F.2d at 1120.  The Commissioner can meet her burden by the testimony of a vocational expert.  *Tackett v. Apfel*, 180 F.3d 1094, 1098–99, 1101 (9th Cir. 1999).

## ANALYSIS

As discussed above, Ms. Vasquez challenges the ALJ's decision on the ALJ's failure to properly credit the opinions of Dr. Neece, her treating physician, and Dr. Rheume, her treating podiatrist.  [#15 at 4].  Ms. Vasquez concedes that the ALJ below did partially consider these opinions, but failed to accord them proper weight or to properly consider all parts of the opinion at all steps of the process.  The Commissioner counters that the ALJ properly supported her decision by substantial evidence, and that the Order should be affirmed.  The court will consider Plaintiff's three substantive objections to the ALJ's opinion in turn before turning to Plaintiff's fourth contention that an immediate award of benefits is justified.

## I.     The ALJ's Treatment of Dr. Necce's Opinion on Mental Limitations

Plaintiff contends that the ALJ reversibly erred in failing to properly account for Dr. Neece's opinion on Plaintiff's mental limitation when formulating the RFC.  [#15 at 14–16].  Ms. Vasquez contends that the ALJ accepted Dr. Neece's findings of moderate limitations but failed

to account for such restrictions in formulating Plaintiff's SVP at the RFC stage.[3]  [*Id.* at 16–17]. This was particular error, Plaintiff argues, because the moderate limitations Dr. Neece found would "interfere with all jobs, even unskilled ones [i.e., those with a SVP of one or two]."  [*Id.* at 18].

The Commissioner counters that the ALJ properly considered Dr. Neece's opinions and found them internally inconsistent, inconsistent with examinations from other providers, and inconsistent with Plaintiff's admitted daily conduct in caring for her disabled son.  [#16 at 8–10]. Relying on *Sullivan v. Colvin*, 519 F. App'x 985 (10th Cir. 2013), Defendant argues that there was no error in failing to mention Plaintiff's moderate limitations in the RFC, and because the ALJ otherwise reasonably and thoroughly considered Dr. Neece's opinions, Plaintiff's claim fails.  [*Id.* at 11].  As to the SVP range of one to two, Defendant argues that recent published case law from the Tenth Circuit clearly provides that moderate mental limitations are not *per se* incompatible with unskilled work, and thus Plaintiff's categorical claim on this point fails.  [*Id.* at 12 (citing *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016); *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015))].

Finally, in reply, Plaintiff rejects much of the Commissioner's argument, arguing that the Defendant is attempting a *post-hoc* rationalization of the ALJ's decision by arguing that Dr. Neece's opinion is internally contradictory and contrary to evidentiary record when the ALJ made no such finding.  [#17 at 2].  On the narrow question presented of the ALJ's treatment of the moderate limitations in the RFC, Plaintiff argues that the ALJ erred by neither accepting nor

---

[3] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'"  *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991)); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003).  An SVP of one or two is consistent with unskilled work. *Vigil*, 805 F.3d at 1203.

rejecting these limitations, despite having given them some weight at an earlier step in the five-step evaluation. [*Id.* at 3–4]. The issue, Plaintiff maintains, is not whether the RFC need use the "moderate" appellation, but rather whether the ALJ erred by entirely omitting discussion on the underlying issues in the RFC. [*Id.*].

The record reflects that in an RFC mental evaluation dated September 5, 2012, Dr. Neece found moderate limitations in Ms. Vasquez's: (1) ability to understand and remember detailed instructions; (2) ability to maintain attention and concentration for extended periods; (3) ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances; (4) ability to respond appropriately to changes in the work setting, and; (5) ability to travel in unfamiliar places and use public transportation. [#15 at 14; #11-11 at 498–99]. Dr. Neece opined that these moderate limitations, in conjunction with other mental limitations ranging from slight to marked, would prevent Ms. Vasquez from "attending work at any job 8 hours per day, 5 days per week" and further that she would be "off task" 30% of the week. [#11-11 at 500].

The ALJ's Decision addressed all of Dr. Neece's mental RFC findings, including his moderate limitations findings. [#11-12 at 597]. The ALJ found that Dr. Neece was a treating source and therefore entitled to deference, but declined to give controlling weight to Dr. Neece's opinions "because they are internally inconsistent and inconsistent with the examinations of other treating providers. Specifically, the broad range of tasks and/or activities to which [sic] Dr. Neece assessed no, slight, or only moderate limitation is inconsistent with his total bar on any full-time employment and the assessment of time 'off task.'" [#11-12 at 597–98]. The ALJ further found that Dr. Neece's opinions regarding Plaintiff's inability to complete full time employment inconsistent with other treatment providers who found mental competency, and in any event the

ability to work is a determination ultimately reserved to the Commissioner. [*Id.* at 598]. While discounting Dr. Neece's opinions in part, the ALJ did give his mental impairment assessment as to Ms. Vasquez's moderate limitations some weight. [*Id.*]. Notwithstanding this assessment, the ALJ assessed that Plaintiff as capable of performing work as a Sales Attendant, Cleaner, or Cashier II, all with a SVP of two. [*Id.* at 605].

The court does not find error in the ALJ's treatment of the moderate mental impairments identified by Dr. Neece, nor in the ALJ's treatment of Dr. Neece's opinion more generally. The ALJ's opinion directly dealt with Dr. Neece's mental RFC evaluation, explicitly assigned it weight, and incorporated it into the RFC determination. Plaintiff's argument on this point is not that the ALJ failed to explicitly deal with the moderate limitations identified above, but rather that because Dr. Neece found moderate impairments that Plaintiff believes interferes with even unskilled/SVP 2 work, the ALJ's treatment of the moderate impairments and Dr. Neece's findings must be deficient. [#15 at 17–18].

The court agrees with the ALJ and the Commissioner that this is incorrect. First, Dr. Neece's opinion on Plaintiff's moderate limitations included explicit work limitations—the 30% "off task" limitation and the inability to work regular hours, five days a week [#11-11 at 500]— which Plaintiff relies on to argue the moderate limitations are incompatible with the SVP 2 work assigned. *See, e.g.*, [#15 at 18–19 ("Dr. Neece's moderate limitations would interfere with unskilled jobs. . . . Therefore, the limitation to unskilled jobs does not capture Dr. Neece's specific moderate limitations."]. But a moderate limitation is not *per se* incompatible with the ability do unskilled work, and so the ALJ's treatment of the moderate limitations was not error simply because Plaintiff believes that the limitations are necessarily incompatible with unskilled work. 20 C.F.R. § 404.1520a(c)(4). For example, in *Vigil*, the Tenth Circuit held that the ALJ did not

err in assigning claimant-appellant an SVP of one or two despite moderate limitations. 805 F.3d at 1203–04.

Further, this court is not persuaded by Plaintiff attempts to distinguish *Vigil* in the Reply. Plaintiff states that "in our case, the ALJ did not explain the evidentiary basis of her conclusion that a limitation to unskilled work adequately accounted for Dr. Neece's specific mental limitations." [#17 at 4]. Not only is this not Plaintiff's argument in the motion—and thus arguably it is waived as Defendant did not have the opportunity to respond—but it is contrary to the ALJ's thorough analysis on this point. The ALJ assigned Dr. Neece's opinion on the moderate limitations some weight but found that opinions from other providers and the extensive record of Plaintiff's active home life supported the ultimate SVP finding. [#11-12 at 598 (evaluating the moderate limitations and finding them consistent with "the claimant's demonstrated mental abilities" in caring for her disabled adult son)]. Accordingly, the court rejects Plaintiff's contention regarding the ALJ's putative error in considering Dr. Neece's moderate limitations in the RFC.

## II.    The ALJ's Treatment of Dr. Neece's Opinion on Physical Restrictions

Plaintiff brings a second challenge based on the ALJ's failure to properly consider Dr. Neece's opinion, this time as it relates to Dr. Neece's evaluation of Plaintiff's physical limitations. [#15 at 19]. Ms. Vasquez concedes that the ALJ properly refused to assign Dr. Neece's opinion controlling weight because it, like the mental opinion noted above, was inconsistent with other record evidence. [*Id.* at 20]. Rather, Plaintiff argues that the ALJ erred by not explicitly determining what measure of weight the opinion was entitled to if not controlling. [*Id.*].

The Commissioner responds that the ALJ clearly—if not explicitly—chose to assign Dr. Neece's opinion no weight in this regard as his opinion was both internally inconsistent and contradicted by other record evidence. [#16 at 13–15]. The Commissioner concedes that the

ALJ's opinion in this regard is "of less than ideal clarity," but argues that because it is well supported by record evidence, the Decision should nonetheless stand. [*Id.* at 16 (citing *Oceguera v. Colvin*, 658 F. App'x 370, 374 (10th Cir. 2016) and quoting *Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979)). In *Oceguera*, the court held that although the ALJ did not expressly state the weight it accorded a treating physician's opinion "her language makes clear that she accorded it little to no weight." 658 F. App'x at 374.

In Reply, Plaintiff argues that the ALJ's stated rationale for declining to give Dr. Neece's opinion controlling weight cannot stand as a rationale for not giving it any weight as the Defendant maintains. [#17 at 5–6]. Plaintiff relies on *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011), where the Tenth Circuit held that "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference . . . the ALJ must make clear how much weight the [treating] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned. If this is not done, a remand is required." *Id.* at 1330 (citation omitted). Plaintiff argues that the Commissioner is once again improperly injecting a *post-hoc* rationale to cover for the ALJ's deficient analysis.

The court begins by rejecting Plaintiff's claim that Defendant is engaging in an improper *post-hoc* rationalization of the ALJ's decision. *Krauser* requires that the ALJ "make clear" what weight is assigned to the opinion by a "sufficiently specific" rationale; it does not require that the ALJ *explicitly* state what weight is assigned, there is no "magic words" requirement. 638 F.3d at 1331. In this vein, *Oceguera* makes clear that an unclear ALJ's decision may nonetheless be deciphered and upheld if the court "can ascertain the weight given and the reasons for that weight." 658 F. App'x at 374. Some degree of after-the-fact reconstruction is permissible if the ALJ's

rationale is sufficiently clear notwithstanding any regrettable ambiguities, and the substance of the

Decision reflects a consideration of the factors set forth in *Langley v. Barnhart*, 373 F.3d 1116

(10th Cir. 2004), which governs the evaluating of a treating physician's opinion when not assigned

controlling weight. These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2)
> the nature and extent of the treatment relationship, including the treatment provided
> and the kind of examination or testing performed; (3) the degree to which the
> physician's opinion is supported by relevant evidence; (4) consistency between the
> opinion and the record as a whole; (5) whether or not the physician is a specialist
> in the area upon which an opinion is rendered; and (6) other factors brought to the
> ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1119; *see also Espinoza v. Berryhill*, No. 18-CV-00315-MEH, 2018 WL 3829956,

at *7 (D. Colo. Aug. 13, 2018) (same).

While the ALJ could have been clearer about the weight assigned to Dr. Neece's opinion

on Plaintiff's physical limitations, the court finds that her analysis and treatment of the opinion

indicates that, in substance, the ALJ applied the *Langley* factors identified above and gave Dr.

Neece's opinion no weight. The court will proceed by analyzing each of the factors in turn. *Id.*

("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source

medical opinions are still entitled to deference and *must be weighed using all of the factors*

*provided in* [20 C.F.R. § 404.1527]." (emphasis added, quoting Social Security Ruling (SSR) 96–

2p, 1996 WL 374188, at *4)). That said, the ALJ is not required to explicitly analyze all six factors

as not every factor applies in every case. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

***The length of the treatment relationship and the frequency of examination and the***

***nature and extent of the treatment relationship.*** The ALJ considered these factors by noting the

frequency and basis of examination underlying Dr. Neece's opinion on Plaintiff's physical

limitations. [#11-12 at 601]. The ALJ gave a comprehensive overview of the treatment relationship between Plaintiff and the Doctor, and the court concludes that this is adequate. [*Id.*].

***The degree to which the physician's opinion is supported by relevant evidence and the consistency between the opinion and the record as a whole.*** The ALJ declined to give Dr. Neece's opinions controlling weight in large part because his opinion was contrary to a great deal of other evidence in the record. For example, Dr. Neece opined that Plaintiff's "neuropathies were disabling and prevented her from completing tasks within her home," but the ALJ noted that Plaintiff admits that she engaged in daily activities, including caring for her severely disabled son, going out to eat, household chores, routinely seeing family, going to the grocery store, baking and craft-making with her grandchildren, and preparing her own meals. [*Id.* at 591, 601–02]. Additionally, the ALJ found that Dr. Neece's opinion was directly contrary to the opinions of other treating physicians and that his opinions contradicted themselves, on one hand stating that the Plaintiff could do no work, but also stating that Plaintiff could do some work, it would just "depend[] on the type of work." [*Id.* at 601–02]. Dr. Neece's opinion is also contradictory and poorly presented. For example, Dr. Neece says Plaintiff could only stand for an hour at a time before taking a break, but states that she could stand for eight hours in an eight-hour workday— this simply does not make sense. [#11-11 at 501]. Dr. Neece further found that Plaintiff could sit for ten hours in an eight-hour day despite only being able to sit for thirty minutes at a time, which is doubly puzzling. [*Id.* at 500]. The court therefore concludes the ALJ properly considered these factors.

***Whether the physician is a specialist in the area upon which an opinion is rendered and other factors brought to the ALJ's attention.*** Dr. Neece is not a specialist, and therefore this

factor is inapplicable. Further, Plaintiff points to no other salient factors before the ALJ that she failed to consider. Accordingly, this factor is neutral/satisfied.

The court finds that while the ALJ's opinion is silent on the precise weight she afforded Dr. Neece's opinion in this context, a holistic analysis of the record indicates that she thoroughly considered Dr. Neece's opinion and, for the numerous deficiencies noted above, declined to accord it any weight. Plaintiff appears to concede that the ALJ rejected Dr. Neece's opinion but then turns to argue the second point, that "the ALJ did not say why she rejected the opinion." [#17 at 6]. Accepting that the ALJ declined to give Dr. Neece's opinion any weight, the court finds that the ALJ certainly explained why—Dr. Neece's opinion was contrary to his own opinion, contrary to the medical evidence, contrary to the opinions provided by other treatment providers, and contrary to Plaintiff's admitted daily activity level and abilities. *Hill v. Comm'r, Soc. Sec. Admin.*, No. 17-CV-02704-NYW, 2018 WL 5886496, at *6 (D. Colo. Nov. 9, 2018) (finding that the ALJ's discussion of the treating physician's opinions "sufficiently explained the weight assigned" to the opinions); *Valles v. Colvin*, No. 14-CV-02019-KMT, 2015 WL 5579573, at *3 (D. Colo. Sept. 23, 2015) (affirming ALJ's rejection of a treating physician's opinion as it was inconsistent with clinical findings and objective evidence).

### III. The ALJ's Rejection of Dr. Rheume's Opinion on Physical Restrictions

Finally, the court turns to consider Plaintiff's challenge to the ALJ's treatment of the physical restriction opinion provided by Dr. Rheume. [#15 at 21]. Here, Plaintiff concedes that the ALJ explicitly stated that Dr. Rheume's opinion was given little weight but argues that the ALJ's analysis was deficient insofar as it conflates the reasons for denying controlling weight with the framework for deciding what specific quantum of weight to then assign to the opinion. [*Id.* at 21–23]. In other words, the ALJ correctly declined to give controlling weight, but then relied on

those same factors to assign the little weight. Plaintiff argues the ALJ's reliance on the existence of conflicting opinions and Plaintiff's daily activities is not sufficient, and therefore the ALJ's decision was not based on substantial evidence. [*Id.* at 24]. Furthermore, Plaintiff argues that the ALJ incorrectly perceived a conflict between the opinion and Plaintiff's daily activities, which involve standing and walking but do not, in fact, conflict with the limits in Dr. Rheume's report. [*Id.* at 25].

The Commissioner argues that the ALJ properly "rejected Dr. Rheaume's [sic] March 2013 opinion that Plaintiff could stand or walk in 30 minute intervals for one to two hours total because it was not supported by the rest of the record, it was inconsistent with the rest of the record, it was based on Plaintiff's subjective complaints, and it was inconsistent with Plaintiff's daily activities." [#16 at 16]. The Commissioner argues there is no tension between the criteria to deny a treating physician's opinion controlling weight and the basis to guide the assignment of another measure of weight. [*Id.* at 17–18]. Thus, the ALJ properly considered Dr. Rheume's "extreme" opinion.

As noted above, Dr. Rheume opined that Plaintiff could stand/walk for thirty minutes at a time for one or two hours total. [#11-12 at 33]. The ALJ noted that Dr. Rheume relied nearly entirely on Plaintiff's own subjective reporting, and referenced no objective medical data. [*Id.*]. The ALJ declined to give this opinion controlling weight, just as she did with Dr. Neece, because Dr. Rheume relied almost entirely on subjective data and were either not supported or contradicted by the other evidence in the record. [*Id.*]. The ALJ then noted that Plaintiff's daily activities were inconsistent with Dr. Rheume's opinion, and so, for that reason and the others discussed above, gave the opinion little weight. [*Id.*].

As noted above, evaluating a treating physician's opinion requires a two-step inquiry: first, consider whether it is conclusive, that is, entitled to controlling weight, and if not, then the ALJ

must make clear how much weight is being given "and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). Once the opinion is denied controlling weight, the ALJ must then analyze the six *Langley* factors identified above. *Langley v. Barnhart*, 373 F.3d at 1119. In this case, the ALJ declined to give controlling weight to Dr. Rheume's opinion as it lacked an adequate foundation in objective medical evidence. [#11-12 at 602]. The ALJ observed that Dr. Rheume's findings were inconsistent with other examinations by treating providers that were generally normal. [*Id.*]. The ALJ then noted that the Dr. Rheume's opinion was inconsistent with Plaintiff's daily activities as she had discussed above, and so assigned it little weight. [*Id.*]. The ALJ fails to include any information reflecting a distinct, second-step analysis of the six *Langley* factors, but rather simply repeats generalized statements made in conjunction with other physicians. *Compare* [*id.*]. *with* [*id.* at 595]. The court respectfully finds this insufficient.

The ALJ's limited analysis does not expressly address the *Langley* factors in determining what weight to give a treating physician's opinion that has been denied controlling weight, and unlike the robust discussion with respect to Dr. Neece, fails to provide sufficient analysis for the court to discern the ALJ's reasoning. Indeed, there is not necessarily any tension between Plaintiff's daily activity, for example, doing the dishes in "spurts" because Plaintiff can "only stand for a few moments," [#11-6 at 202, 203], and Dr. Rheume's limitations regarding Ms. Vasquez' abilities to stand and walk—indeed, they could be read to be compatible. Thus, it was incumbent upon the ALJ to more clearly explain what she found to be contradictory to Dr. Rheume's opinion, and why she was only according it minimal weight. *See Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289–90 (10th Cir. 1995) (holding that an ALJ must give a treating physician's opinion substantial weight "unless good cause is shown to disregard it."); *Scott v. Colvin*, No. 13-

CV-1302-DDC, 2014 WL 4377744, at *4 (D. Kan. Sept. 4, 2014). It may well be that the ALJ discounted Dr. Rheume's opinion because of limited interaction with Ms. Vasquez, and it appears inconsistent with what Dr. Neece, who appears to be the physician that plaintiff primarily sees, describes as her ability to stand and/or walk for one hour at a time for up to eight hours total. Or it may be because Ms. Vasquez's daily activities above and beyond what is recounted in the ALJ Decision [#11-12 at 600–01], reflect that she is not limited to walking or standing in 30-minute intervals for only one or two hours total. But without more explanation, the ALJ's conclusory statement precludes a meaningful review of the ALJ's treatment of the opinion. *Krauser*, 638 F.3d at 1331; *see also Chrismon v. Colvin*, 531 F. App'x 893, 901 (10th Cir. 2013). Accordingly, the court must vacate the denial and remand for further consideration.

## IV.     Plaintiff's Request for an Immediate Award

Given the long history of this case, Plaintiff seeks an immediate award of benefits instead of a further remand for a third adjudication before an ALJ. [#15 at 27; #17 at 9]. The Commissioner prefers a remand, stating that Plaintiff has not "overwhelmingly" established her disability and there's enough contrary evidence in the medical record to support a remand as opposed to immediate award. [#16 at 18–19]. While the court finds the ALJ's decision to be insufficient and sympathizes with the prolonged adjudication of Ms. Vasquez' claim for benefits, the court finds that remand is the proper remedy in this situation.

The Tenth Circuit has indicated that "outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Salazar v. Astrue*, 788 F. Supp. 2d 1231, 1244 (D. Colo. 2011) (quoting *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989)). For the issues immediately challenged in the above three issues, the court

finds that the ALJ's analysis was incomplete but that the record is not so overwhelming as to leave this court with the definite conviction that a direct award of benefits is appropriate.

Plaintiff makes a further argument that an immediate award of benefits is justified as she is already eligible for benefits pursuant to Grid Rule 201.14 given her age and the ALJ's prior adjudication that she is incapable of performing skilled work as she is limited to unskilled, SVP 1/2 work. The Commissioner argues an award of benefits is not proper but does not address this issue.

The "Grid Rules" are found at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Ashcraft v. Berryhill*, No. CIV-17-1386-BMJ, 2018 WL 4855215, at *10 (W.D. Okla. Oct. 5, 2018). Grid Rule 201.14 directs a finding of disability for someone who is closely approaching advanced age, can no longer perform any past relevant work, has no transferrable skills, and can only perform sedentary work. *Roland v. Berryhill*, No. 16-CV-03095-LTB, 2018 WL 915038, at *3 (D. Colo. Feb. 16, 2018). The court finds that while Plaintiff likely fulfills this rule's requirements, the court cannot conclusively make that determination because, as mentioned above, the evidence regarding Plaintiff's mobility limitations is conflicted and not readily resolvable at this stage and further there is no conclusive showing on Plaintiff's (lack of) transferrable skills. For example, the ALJ found that Dr. Summerlin's examination of Plaintiff supported a finding that Plaintiff was limited to light work with some limitations. [#11-12 at 595]. Her gastric surgeon, Dr. Metz, prescribed regular weekly cardiovascular exercise. [*Id.* at 596]. The court cannot say that Plaintiff's sedentary-work limitation is clear enough at this stage to require the immediate award of benefits. Accordingly, this request is denied as the issue is better committed to the ALJ.

## CONCLUSION

For the reasons stated herein, the court hereby **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further proceedings that are consistent with this Memorandum Opinion and Order.

DATED:  July 19, 2019

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge